**UNITED STATES of America**

**v.**

**Gary Duane CONNER.**

**Crim. No. 73-B-247.**

United States District Court,
S. D. Texas,
Brownsville Division.

Oct. 2, 1973.

Anthony J. P. Farris, U. S. Atty., and John Patrick Smith, Asst. U. S. Atty., for the Government.

Knox Jones and Robert Yzaguirre, McAllen, Tex., for defendant.

MEMORANDUM AND ORDER

GARZA, District Judge.

Defendant, Gary Duane Conner, stands charged with knowingly and intentionally importing into the United States 675 pounds of marihuana, in violation of 952(a), Title 21, United States Code, and of knowingly and intentionally possessing the same, with intent to distribute, in violation of 841(a)(1), Title 21, United States Code.

The Defendant filed a Motion to Suppress, and a hearing was held before the Court on September 20, 1973.

The Ford van, which the Defendant Conner was driving, was stopped by U. S. Border Patrolmen without a search warrant. The Defendant is relying on the standards established in the recent Supreme Court decision in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

Finding that the facts in this case are distinguishable from those in Almeida-

Sanchez v. United States, *supra,* the Motion to Suppress is denied. The facts are simple and can be capsuled as follows:

On July 19, 1973, at approximately 11:45 p. m., Border Patrol Agents W. G. Luckey and R. K. Fox were on patrol duty on the levee, which is located one-half mile from the Rio Grande River and the border of Mexico. This levee is maintained by the International Boundary and Water Commission, and is not a public road, but cars are allowed to drive on it. While Officers Luckey and Fox were on routine patrol guarding a stretch of the vast International border with Mexico against the entry of illegal aliens, there suddenly appeared in front of them two automobiles on the levee, one of which made a turn in front of them. The other left the river area on a feeder road, which is an extension of F. M. Road 494. The officers went around a car on the levee and followed the automobile which had left the river levee and followed it on F.M. Road 494, and stopped it one-half mile north of its intersection with F.M. Road 1016, approximately a mile and a half or two miles from the river. It was a Ford van being driven by the Defendant Conner. Immediately upon alighting from the vehicle, Defendant Conner was observed to have mud on his pants and his shoes.

Officer Luckey, who has on many occasions found similar vehicles carrying illegal aliens in the past, looked in the door of the van and noticed a number of large bundles similar to those he had seen on many occasions in the past, which he had found were full of marihuana. He immediately advised Defendant Conner of his Constitutional rights and then went to the back of the van, opened the door, cut one of the bundles with his knife, and his suspicions were confirmed when it was revealed to him that, in truth and in fact, the bundles were full of what appeared to him to be marihuana.

Officer Luckey testified that even though there was a small village called Granjeno at the extension of F.M. Road 494, that usually at that time of night hardly a soul in that little village is stirring. He testified that at this time of the night, it would seem that they would roll up their sidewalks, if they had any, and that people who lived in the area where the arrest was made are hardly ever up and around at that time of night.

This is not a case where Border Patrolmen are roving public highways miles away from the border and stopping automobiles to search for illegal aliens at their whim, which is what Almeida-Sanchez v. United States condemned. These were two cars on the river levee, one-half mile from the border, in the deep of night, which appeared to them as a clandestine meeting, with the Ford van leaving the river area. Under these facts, the Border Patrol Officers had more than probable cause to stop and search the automobiles for aliens. Once having stopped it, the appearance of Defendant Conner with muddy pants and shoes, the bundles of what appeared to be marihuana in plain view, gave them more than probable cause to search for and seize the marihuana in question.

As stated by Judge Ingraham of this Circuit in United States v. Byrd, 483 F. 2d 1196 (5 Cir., 1973), "the holding of *Almeida-Sanchez* is narrow". The recent case by the Ninth Circuit of United States v. Bugarin-Casas, decided August 15, 1973, 484 F.2d 853, reiterated that Circuit's holding that a stop may be made by Border Patrol Agents based on "founded suspicion", which may be less than probable cause.

The proximity to the river, the time of night, an automobile making u-turns on the river levee; all of these things gave Officers Luckey and Fox "founded suspicion" to make the stop of the Ford van that Conner was driving. After this valid investigatory stop, probable cause arose to make the search and the finding of the contraband.

If the action of the U. S. Border Patrol Agents in this case cannot be sustained and only those stopped at the reg-

ular points of entry or their equivalent, such as the check points established by the U. S. Border Patrol, can be stopped and searched, then we better make up our minds that if we are to protect our vast borders against the entrance of illegal aliens and contraband into this country, we be prepared to spend millions of dollars to assure that those who are prone to violate our immigration and smuggling laws are caught at the river's edge when they land. This Court cannot believe that this was the intended holding of Almeida-Sanchez v. United States, *supra.*

The Motion to Suppress must, therefore, be denied, and this cause is set for trial before a jury for October 29, 1973, at 9:30 a. m.